12-4612-cr
United States v. Cardona

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

## SECOND AMENDED SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of December, two thousand thirteen.

PRESENT: AMALYA L. KEARSE,
         DENNIS JACOBS,
         BARRINGTON D. PARKER,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,
         Appellee,

         -v.-                                      12-4612-cr

ARMANDO CARDONA,
         Defendant-Appellant,
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:              Cheryl J. Sturm; Chadds Ford, Pennsylvania.

FOR APPELLEE:               S. Dave Vatti (with Robert M. Spector on the brief), Assistant United States Attorneys, for Deirdre M. Daly, Acting United States Attorney for the District of Connecticut, Hartford, Connecticut.

1

Appeal from a judgment of the United States District Court for the District of Connecticut (Covello, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED;** remanded for clerical correction of the judgment.

Defendant-appellant Armando Cardona appeals from a judgment entered on November 16, 2012 in the United States District Court for the District of Connecticut (Covello, J.), after a jury found the Cardona guilty of one count of conspiracy to possess with the intent to distribute five kilograms or more of cocaine and one count of possession with intent to distribute five kilograms or more of cocaine. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Cardona challenges the denial of his motion to suppress various pieces of evidence, and argues that his trial counsel was ineffective for failing to object to certain jury instructions. We address these claims in turn.

## A. The Suppression Motion

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government. United States v. Jackson, 652 F.2d 244, 246 (2d Cir. 1981). The factual findings of a district court on a motion to suppress, including assessments of credibility, cannot be disturbed unless shown to be clearly erroneous. United States v. Villegas, 928 F.2d 512, 517 (2d Cir. 1991).

Cardona argues that his arrest and the ensuing search of his vehicle lacked probable cause. We disagree.

"Probable cause to arrest exists when an officer has knowledge of facts and circumstances 'sufficient to warrant a prudent man in believing' that an offense is being or has been committed." United States v. Edmonds, 535 F.2d 714, 719 (2d Cir. 1976) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Experience of the arresting officers is a relevant factor in the probable cause inquiry. See, e.g., United States v. Rosario, 638 F.2d 460, 462 (2d Cir. 1980).

Probable cause to arrest may be based in whole or in part upon information obtained through the use of an informant, in which case the court must "assess the information by examining the 'totality of the circumstances' bearing upon its reliability." United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993) (citation omitted). "[I]t is established in this circuit that evidence sufficient to show probable cause by corroborating even a previously unknown informant may be found in circumstances which do not actually establish the crime itself." United States v. Rueda, 549 F.2d 865, 870 (2d Cir. 1977). "An untested informant's story may be corroborated by other facts that become known to the [arresting agent], even if they corroborate only innocent aspects of the story." United States v. Sultan, 463 F.2d 1066, 1069 (2d Cir. 1972). And "where law enforcement authorities are cooperating in an investigation . . . , the knowledge of one is presumed shared by all." Illinois v. Andreas, 463 U.S. 765, 771 n.5 (1983).

The law enforcement officers had probable cause to arrest Cardona even though they never saw him at the motel or overheard him making unequivocal statements about criminal conduct. First, the Government relied on information provided by Javier Morales-Gomez, who claimed (upon being arrested for drug possession) that he was to deliver the 30 kilograms of cocaine to Cardona. The officers had not previously worked with Morales-Gomez, but they verified many details of his account, including his physical description of Cardona, Cardona's nationality, the specifics of Cardona's criminal record, as well as where Cardona lived and what car he drove. The corroboration of these "innocent" details gave sufficient reason to believe the criminal aspects of the story. See Sultan, 463 F.2d at 1069. Moreover, Morales-Gomez participated directly in the sting operation that culminated in Cardona's arrest. This matters because an informant is more reliable if he meets with the police face-to-face because he runs a greater risk that he will be held accountable if his information proves false. See United States v. Salazar, 945 F.2d 47, 50-51 (2d Cir. 1991).

Cardona's own actions further corroborated Morales-Gomez's account. The officers heard and recorded two calls in which Cardona and Morales-Gomez arranged a meeting (i.e., a delivery of the cocaine to Cardona) at a room in a particular motel, which they referred to familiarly as "the

3

house."  Shortly after a subsequent call, Cardona's co-defendant, Andres Alvarez, arrived at the designated room at the motel and told Morales-Gomez that he had been sent to retrieve "Papi's stuff."  Upon taking possession of the cocaine, Alvarez was arrested.

The officers inferred, based on their experience, that Alvarez had been sent by Cardona as a courier (an arrangement previously alluded to in conversation between Cardona and Morales-Gomez).  Moreover, within minutes of Alvarez's arrest, officers surveilling the home of Cardona's wife observed Cardona drive at high speed into the parking area.  They moved in when he parked and arrested him.

The totality of the circumstances provided probable cause for Cardona's arrest.  Cf. United States v. Gagnon, 373 F.3d 230, 240 (2d Cir. 2004) (holding that probable cause existed to search defendant's tractor trailer, where confidential informant who was detained at border with a trailer full of marijuana told officers that he was driving to meet the defendant to exchange trailers, and defendant subsequently arrived at the location described, at the time described, in a tractor with an empty trailer that matched informant's description); Rueda, 549 F.2d at 870 (holding that probable cause existed where "DEA agents were given an accurate description of Rueda, and several specific details given them occurred exactly as [informant] had recounted or predicted").  The use of a courier is not enough to render Cardona's arrest unlawful, given Morales-Gomez's reliable information and Cardona's own involvement up to the time of his arrest.

The same information that established probable cause to arrest the defendants also established probable cause to believe that Cardona's vehicle contained evidence of the cocaine distribution conspiracy.  See United States v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004) ("Under the 'automobile exception' to the Fourth Amendment warrant requirement, police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime.").  In particular, there was a fair probability that items needed to conduct the transaction--such as money, cellular phones, or weapons--were in Cardona's car.  Indeed, a cell phone bearing the number that Morales-Gomez dialed to contact Cardona was visible on the seat of the car.

Because both Cardona's arrest and the subsequent search of his car were supported by probable cause, the district court did not err in denying defendant's motion to suppress the resulting evidence.

Next, Cardona claims that the protective sweep of his wife's residence performed after his arrest was invalid. Law enforcement officers may conduct a protective sweep of a residence during the course of an arrest if they possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." Maryland v. Buie, 494 U.S. 325, 337 (1990). This standard was satisfied because the officers had reason to believe that at least one other person (Cardona's wife, whom they had seen during surveillance) was likely to be in the residence and that Cardona (who had been coming from and going to the residence) may well have had additional associates in a transaction involving 30 kilograms of cocaine, and because the residence's windows overlooked the scene of Cardona's arrest. The officers reasonably believed that associates in the residence could pose a threat to the officers or to the preservation of any evidence therein. See United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991) (upholding protective sweep where "[t]he arresting officers had reason to believe that defendant-appellant Kearney and her mother--both of whom resided in the house--were on the premises"). Moreover, the scope of the officers' protective sweep did not extend beyond the "cursory inspection" deemed proper by the Supreme Court. Buie, 494 U.S. at 335. The district court did not err in holding that the officers lawfully entered Mrs. Cardona's residence to perform a protective sweep.

Finally, Cardona challenges the subsequent search of his wife's residence, during which moneys belonging to Cardona were seized, on the ground that the consent given by his wife was involuntary. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). The district court found that Mrs. Cardona is a fluent English speaker and a "mature, intelligent and resourceful woman"; that she had the authority to consent; and that she was at all times calm and cooperative during the professional and brief discussion. She also testified

5

that multiple officers told her that she was not in any trouble.

In making these findings, which are supported by the record, the district court credited the officers' testimony that there was no coercive conduct, and cited internal contradictions in Mrs. Cardona's competing versions of events and the fact that her testimony at the suppression hearing that she had refused consent was contradicted by her prior sworn affidavit. Cardona has failed to show that the district court committed clear error in crediting the officers' testimony rather than Mrs. Cardona's. See United States v. Mendez, 315 F.3d 132, 135 (2d Cir. 2002) ("Where the district court's factual findings are premised upon credibility determinations, we grant particularly strong deference to those findings."). Thus, although the consent was given after the officers performed a protective sweep of the residence, which did involve a substantial show of authority, the district court did not clearly err in finding that Cardona's wife gave valid consent for the search. Cf. United States v. Ceballos, 812 F.2d 42, 46, 51 (2d Cir. 1987) (holding that consent was voluntarily given even though the police forcibly arrested the defendant prior to his consent to search).

Accordingly, the district court properly denied Cardona's motion to suppress.

## 2. Ineffective Assistance of Counsel

Cardona next raises various claims of ineffective assistance of counsel based on his trial counsel's failure to challenge specific jury instructions.

"[T]his Court has expressed a base-line aversion to resolving ineffectiveness claims on direct review." United States v. Khedr, 343 F.3d 96, 99-100 (2d Cir. 2003) (citation omitted). As the Supreme Court has explained, "in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" because the district court is "best suited to developing the facts necessary to determining the adequacy of representation during an entire trial." Massaro v. United States, 538 U.S. 500, 504, 505 (2003). "When an ineffective-assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating

6

or preserving the claim and thus often incomplete or inadequate for this purpose." Id. at 504-05.

Cardona's claims of ineffective assistance were not raised in the district court and would be illuminated by fact-finding. "[E]xcept in highly unusual circumstances," the attorney whose performance is challenged should be afforded an "opportunity to be heard and to present evidence, in the form of live testimony, affidavits or briefs" to explain the decision-making process. Sparman v. Edwards, 154 F.3d 51, 52 (2d Cir. 1998); see also Khedr, 343 F.3d at 99-100.

Accordingly, we decline to rule on Cardona's claims that his trial counsel rendered constitutionally ineffective assistance.

For the foregoing reasons, and finding no merit in Cardona's other arguments, we hereby **AFFIRM** Cardona's conviction. However, we note nostra sponte that the judgment from which Cardona has appealed states, inaccurately, that he "pled guilty to count[s] One and Two of the Indictment." (Judgment at 1 (emphasis added).) Accordingly, the matter is remanded for entry of an amended judgment accurately stating that Cardona was found guilty on those counts following a jury trial.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK